UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| HEATHER NICOLE HORNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-CV-67-DCP |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 10]. Now before the Court is Plaintiff's Brief in Support of a Social Security Appeal [Doc. 13]. Heather Nicole Horne ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will **REVERSE** the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On March 23, 2021, Plaintiff filed for Disability Insurance Benefits ("DIB") [Tr. 180–81] pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Plaintiff claimed a period of disability that began on June 3, 2020 [*Id.* at 180]. After her claims were denied initially [*id.* at 69–80] and upon reconsideration [*id.* at 81–92], Plaintiff requested a hearing before an ALJ [*id.* at 109–10]. A telephonic hearing was held on October 31, 2023, before ALJ Benjamin Burton (hereinafter "the ALJ") [*Id.* at 32–68]. On February 5, 2024, the ALJ found Plaintiff not disabled [*Id.* at 11–24]. Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 7–10]. The Appeals Council denied Plaintiff's request for review [*id.* at 1–6], making the ALJ's decision the

final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 21, 2025, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 13 and 17].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

### A. Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

**B. ALJ Findings**

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since June 3, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia, obesity, and migraines (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb ramps and/or stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; frequently reaching in all directions; avoid occupational hazards such as unprotected heights and moving mechanical parts; and avoid exposure to flashing lights and extremely loud noises.

6. The claimant is capable of performing past relevant work as a drafter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 3, 2020, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 11–24].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. ANALYSIS

Plaintiff raises two issues on appeal: whether there is substantial evidence to support the ALJ's determination for the RFC and whether the ALJ failed to evaluate and adequately explain his consideration of the opinion of her treating neurologist, Douglas A. Wright, M.D. ("Dr. Wright") [Doc. 13]. Plaintiff asserts that the ALJ erred in assessing her RFC because he "gave no restrictions associated with the limitations posed by the severe migraine headaches and the impact of fibromyalgia pain in limiting [her] attendance at work, ability to need additional work breaks[,] and being off task when the symptoms increase" [*Id.* at 17]. She contends that the ALJ failed to mention her headache log showing the occurrence and severity of her headaches and to consider "all witness testimony to any degree when evaluating [her] symptoms and their impact on her ability to work" [*Id.* at 18]. Plaintiff points to the ALJ's finding that her migraine headaches are a severe impairment, three third party statements "attesting to her headaches and their impact of her ability to work," assessments from two of her treating physicians "that she would miss work more than one day per month and be off task," "three Function Reports evidencing the impact of her headaches on her ability to concentrate [and] need to be in a dark room," and her own testimony in support of her contention that "she could not maintain attendance and would be off task at times when having even a moderate migraine" [*Id.* 20–21]. She added that the vocational expert ("VE") testified that missing one day of work per month would eliminate jobs [*Id.* at 21 (citing Tr. 65)]. Additionally, Plaintiff asserts that the ALJ failed to articulate his reasons for finding the opinions of Dr. Wright, her treating neurologist, as unpersuasive as required by 20 C.F.R. § 404.1520c [*Id.* at 21].

The Commissioner responds that "[s]ubstantial evidence supports the ALJ's determination that Plaintiff had the [RFC] to perform a range of light exertional work" [Doc. 17 p. 2]. He notes

that the ALJ weighed the medical evidence as well as Plaintiff's allegations, explained how the evidence supported the RFC restrictions, and incorporated environmental limitations to avoid migraine triggers and postural limitations due to her chronic pain symptoms [*Id.* at 2, 7].

As previously reviewed, an RFC describes the most a claimant can do in a work setting despite any physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). Determining the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] [RFC]'" (first brackets in original) (quoting 20 C.F.R. § 416.920(a)(4)(v)). In formulating the RFC, the ALJ is required to consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ's RFC assessment must be based on all relevant evidence in the record, including the claimant's reported limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Importantly, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). In this endeavor, an ALJ is required "to show his or her work[.]" *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (quoting *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021)). And while "[t]he ALJ "need not discuss every aspect of the record or explain every finding at length," he "must 'articulate with specificity reasons for the findings and conclusions that [he] . . . makes' to facilitate meaningful judicial review." *Shively v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-283, 2024 WL

4277832, at *1 (E.D. Tenn. Sept. 24, 2024) (quoting *Bailey v. Comm'r of Soc. Sec.*, No. 90-3061, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999)). Accordingly, "this Court cannot uphold an ALJ's decision, even if there if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer*, 774 F. Supp. 2d at 877 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

For the reasons discussed below, the Court finds that the ALJ did not build a logical bridge between the evidence of Plaintiff's fibromyalgia and migraine headaches and the RFC, nor did he adequately perform a supportability and consistency analysis of Dr. Wright's opinion.

As an initial matter, the Court notes that the ALJ considered some evidence related to Plaintiff's fibromyalgia and migraine conditions. For instance, the ALJ acknowledged Plaintiff's subjective complaints, including allegations of severe joint pain causing limitations in movement and migraines triggered by flashing lights and loud noises [Tr. 19]. He also summarized some of the medical records that documented Plaintiff's treatment for both conditions [Tr. 20]. The ALJ noted that Plaintiff was diagnosed with fibromyalgia in 2015 and prescribed Cymbalta in 2021 [*Id.*]. In March 2022, she was found to have "migratory areas of trigger point tenderness," not limited to any muscle, nerve or root group, and her prescription for Gabapentin was increased after experiencing a fall [*Id.*]. With respect to migraines, he noted that in the same March 2022 treatment note, Plaintiff was to take Tylenol and Excedrin migraine as needed [*Id.*]. The ALJ also observed that Plaintiff reported to Dr. Wright in January 2023 that she has three migraines per month that interfered with her daily living activities but that she was "doing 'okay'" with her migraines since her last visit with him and that she was treated with Botox. [*Id.*].

Finding that Plaintiff's allegations were not consistent with the treatment records but that the record supported some limitations—just not to the extent alleged by Plaintiff—the ALJ crafted limitations of light work with limitation to "avoid exposure to flashing lights and extremely loud noises" to "keep [Plaintiff] away from triggers that could start a migraine" and "postural limitations and limitations with all reaching due to her chronic pain symptoms throughout her body" [Tr. 19, 20–21].

Plaintiff acknowledges that the ALJ provided limitations for lights and noise to reduce the possibility of a headache but states "there is no indication in the record that this would reduce the number of severe migraines to the point of not impacting her ability to work" [Doc. 17 p. 20]. She further argues that the ALJ failed "to provide in the RFC any provision for missing work or the need to step away from the work environment multiple days per month," and thus, "[t]he RFC is not supported by substantial evidence" [*Id.*]. She points to the headache log, which she states the ALJ failed to mention, showing the frequency of occurrence and severity rating of her migraines, "document[ing] severe headaches extending over 6 hours multiple days per month" that "are debilitating to the extent she must go into a dark room [and] take her medication until they resolve" [*Id.*]. She also points to her own testimony and that of her husband, which the ALJ found unpersuasive, discussing the impact of her medical conditions as well as "the fact that she has multiple events per month" [*Id.* at 18]. In addition, Plaintiff notes two third-party statements, one from a friend and one from a former co-worker, attesting to the impact of her conditions [*Id.* at 21]. Finally, Plaintiff highlights that the treatment notes and assessments by her treating physicians, including Dr. Wright, indicate "she would miss work more than 1 day per month and be off task" [*Id.* a 20].

The Commissioner contends that "substantial evidence supports the ALJ's determination that Plaintiff has the [RFC] to perform a range of light exertional work" and that the ALJ properly weighed the medical evidence and Plaintiff's allegations in assessing the RFC based on a consideration of the record as a whole [Doc. 17 pp. 2].

In this case, according to Plaintiff, her fibromyalgia causes painful joints in her hands, feet, and ankles and other various joints [Tr. 39]; bouts of weakness causing her to fall and drop things [*id.* at 38, 39]; and a steady pain level of 5 out of 10, with some days at 8 or 9 due to fibromyalgia [*id.* at 44]. She testified that with respect to her migraine headaches, and even with Botox injection treatment every three months, she continues to experience several severe migraines a month, requiring her to lay in a dark room and maintain a quiet environment [*Id.* at 39]. She described that the migraines cause her to have blurred vision and difficulty maintaining focus; flashing lights and loud noises are triggers; and when experiencing a severe migraine, she is unable to function or drive [*Id.* at 40].

The ALJ acknowledged Plaintiff's testimony about those conditions to some extent, noting that she alleged "severe joint pain from fibromyalgia that causes limitation in her movement;" anxiety triggered by large crowds can turn into a headache or body aches; and "flashing lights and loud noises can trigger migraines" [Tr. 19]. The ALJ also acknowledged her testimony that she "depends on friends and family to help with her children and their afterschool activities" and that "she has missed some of their games because of her impairments" [*Id.*]. The ALJ then concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" [Tr. 20]. But this boilerplate statement failed to

identify what parts of Plaintiff's testimony were not credible and why, and most notably, failed to explain why her fibromyalgia and migraines, particularly when considered in combination, would not result in her being off-task or absent for a percentage of the workday. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015) ("Our chief concern with the popularity of this template, however, is the risk that an ALJ will mistakenly believe it sufficient to *explain* a credibility finding, as opposed to merely introducing or summarizing one.").

"[B]ecause fibromyalgia presents without objectively alarming signs, cases involving fibromyalgia 'place[] a premium on the analysis of subjective symptoms and, for purposes of judicial review, on the ALJ's articulation of the reasons supporting this analysis.'" *Rossi v. Comm'r of Soc. Sec.*, No. 1:25-CV-625, 2025 WL 3671796, at *10 (N.D. Ohio Dec. 18, 2025) (second set of brackets in original) (quoting *Jones v. Comm'r of Soc. Sec.*, No. 1:21-CV-01309, 2022 WL 3567412, at *10 (N.D. Ohio July 20, 2022), *report and recommendation adopted,* 2022 WL 3566791 (N.D. Ohio Aug. 18, 2022). And further, "the Sixth Circuit has described the lack of corroborative findings as 'basically irrelevant' in the context of analyzing fibromyalgia symptoms." *Id*. (quoting *Fyffe v Comm'r of Soc Sec.,* No. 1:21-cv-332, 2022 WL 2176538, at *10 (N.D. Ohio June 16, 2022)).

Similarly, "[m]igraine headaches are difficult to assess." *Christina N.M. v. O'Malley*, No. 1:23-cv-00716, 2024 WL 4133950, *5 (S.D. Ind. July 1, 2024). "They are so variable that claimants 'may be symptom-free and unimpaired for some time,' but then suffer migraines so severe that they are required to miss work." *Id.* (quoting *Dennie K. K. v. Comm'r of Soc. Sec.*, No. 21-CV-01188, 2022 WL 17830498, at *4 (S.D. Ill. Dec. 21, 2022)). And "in cases where claimants suffer from migraine headaches that require them to retreat to a dark room to alleviate symptoms this must be accounted for in the RFC analysis." *Id.* (citations omitted); *see also Charvat v.*

*Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-02121, 2023 WL 7473760, at *18 (N.D. Ohio Oct. 25, 2023) (finding that the ALJ erred when he failed to acknowledged the limiting effects of the plaintiff's migraines), *report and recommendation adopted sub nom. Charvat v. Kijakazi*, No. 1:22CV2121, 2023 WL 7461844 (N.D. Ohio Nov. 9, 2023).

Here, while the ALJ discussed some of the treatment and subjective complaints relating to Plaintiff's fibromyalgia and migraine headaches and accommodated them with some limitations, the Court agrees with Plaintiff that the ALJ erred by failing to sufficiently explain why any off task or absenteeism limitation was not included in the RFC finding. In the ALJ's analysis addressing limitations assessed by Dr. Wright, Plaintiff's treating neurologist, related to fibromyalgia and migraine headaches, he stated:

> The opinions contained in the form [Exhibit 37] have been considered. The opinion that [Plaintiff's] symptoms get exacerbated one day per month and the ability to sit during the workday would depend on the severity of symptoms. It was also opined the claimant would need unscheduled breaks during the workday (Exhibit 37F). These opinions are not found to be persuasive. The opinion is not supported by the treatment records of Dr. Wright that do not show such intense symptoms that would require such limitations (Exhibits 1F, 4F, 17F, 30F, 31F). The opinion is also not consistent with the treatment records discussed above (Exhibits 11F, 19F, 25F, 27F).
>
> The undersigned has also considered the statements that the claimant would miss work due to migraines (Exhibits 36F, 37F). These opinions are not found to be persuasive. They are vague and not supported by the treatment records discussed above and it also is not consistent with the examination of the consultative examiner (Exhibit 24F).

[Tr. 22]. The referenced Exhibits 36F and 37F are the October 17, 2023 medical assessment forms completed by Dr. Wright, assessing not only Plaintiff's fibromyalgia [Tr. 1234–36] but also her migraine headaches [Tr. 1230–31]. In these assessments, which were in a checkbox form, Dr. Wright indicated that Plaintiff's fibromyalgia symptoms could cause her to need unscheduled

breaks throughout the workday, depending on the severity of her symptoms, and to miss more than one day of work per month [Tr. 1234–36]. He also indicated that during periods when Plaintiff experiences migraine headaches to "such a significant degree," she would likely to miss work one or more days per month, and when she has "severe migraine headaches," she would "need to lay down in a dark room for an extended period of time" [Tr. 1230-31]. While an ALJ need not give "controlling weight" to checkbox forms with no reference to medical evidence, *see Makela v. Comm'r of Soc. Sec.*, No. 22-1047, 2022 WL 9838285, at *5 (6th Cir. Oct. 17, 2022), "the form takes on greater significance when it is supported by medical records." *John M. v. Comm'r of Soc. Sec.*, No. 23-CV-11397, 2024 WL 3896646, at *5 (E.D. Mich. July 30, 2024) (quoting *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)), *report and recommendation adopted*, No. 23-CV-11397, 2024 WL 3890168 (E.D. Mich. Aug. 21, 2024). "Thus, an ALJ's failure to address a treating physician's opinion adequately is not harmless if that opinion is supported by medical records generated close in time to the completion of the form." *Id.* (citing *Lovejoy v. Comm'r of Soc. Sec.*, No. 1:21-CV-00836, 2022 WL 3227364, at *12 (N.D. Ohio Aug. 10, 2022); *Johnson v. Comm'r of Soc. Sec.*, No. 1:20CV156, 2021 WL 1214795, at *4 (N.D. Ohio Mar. 31, 2021)).

In summarizing Dr. Wright's treatment of Plaintiff, the ALJ notes that there was no change in her condition from December 2021 to January 2023; that she was diagnosed with fibromyalgia in 2012; she "was doing 'okay' with her migraines since her last visit;" she reported three migraines per month that interfered with daily living activities; and she was treated with Botox [Tr. 20]. In the medical records generated close in time to Dr. Wright's assessments, specifically the January 2023 report noting she was doing "okay" with her migraines, the records include more information such as tolerating Topamax, a dark room as an alleviating feature, and a monthly frequency of 3 severe headaches, affecting activities of daily living, 3 moderate headaches, and 2

mild headaches [Tr. 1055]. And with regard to her fibromyalgia, the records include that she was tolerating Cymbalta and Gabapentin, experiencing "aching/electrical/shooting/squeezing/ burning/numbness" daily on intermittent basis, with symptoms worse in the morning and no alleviating features [Tr. 1055]. These records support the noted diagnoses of fibromyalgia and migraines, continued symptoms even with medication, and show that Plaintiff experienced fibromyalgia pain on a daily basis and during episodes of severe migraine headaches, needed to lay down in a dark room to help alleviate symptoms, which are the same or similar to the notations on the two medical assessment forms. "Similar notations on check-box forms have been found sufficient to support a medical opinion." *John M.*, 2024 WL 3896646, at *5 (citing *Groshong v. Colvin*, No. 14-12183, 2015 WL 5032839, at *4 (E.D. Mich. Aug. 12, 2015), *adopted*, 2015 WL 5093555 (E.D. Mich. Aug. 28, 2015). Thus, it is unclear what the ALJ relied on to determine that Dr. Wright's assessments were unsupported by his treatment records.

As to consistency, the ALJ states Dr. Wright's opinions are not consistent with "the treatment records discussed above" [Tr. 21 (citing 11F, 19F, 25F, 27F)]. But the ALJ did not elaborate on why these records bolster his consistency determination and in looking at his discussion of these records elsewhere in the decision, it remains unclear. For example, the ALJ points to the 81 pages comprising the treatment notes of April Edwards, FNP, Plaintiff's primary care provider. A review of those records does not support the ALJ's conclusion of an inconsistency as throughout those notes, there is mention of Plaintiff's history of fibromyalgia and migraines and treatment with medications under the care of Dr. Wright. And in looking at his earlier discussion of Ms. Edwards's records, the ALJ notes they indicate Plaintiff has been prescribed Cymbalta for fibromyalgia, she reported significant back pain in August 2021, and although her pain decreased, she was still experiencing daily pain [Tr. 20]. Similarly, the few pages of notes from Plaintiff's

July 2021 office visit to a urology clinic for recurrent urinary tract infections [Tr. 697–700] and her March 2023 follow up for her thyroid disorder [Tr. 1083–95], referenced by the ALJ, both mention medications for her fibromyalgia and migraine conditions, so again, any inconsistency is unclear as the records do not appear to address frequency or severity of symptoms. Finally, the ALJ's reference to Exhibit 25F is perplexing as that is a treatment note of Dr. Wright himself. A medical opinion's consistency is properly addressed by an ALJ when the ALJ determines whether the medical opinion is consistent with evidence from other medical sources and non-medical sources in the claim–not evidence from the same medical source. 20 C.F.R. § 404.1520c(c)(2); *cf. Creter v. Saul*, No. 1:20-cv-00840, 2021 WL 809323, at *11 (N.D. Ohio Mar. 3, 2021) (holding that ALJ did not err where ALJ specifically cited treatment records ALJ believed were inconsistent with treating physician's opinion and explained why).

Specifically, in reference to missing work due to migraines, the ALJ stated Dr. Wright's opinions were vague and not supported "by the treatment records discussed above" [Tr. 22]. But for the same reasons just discussed, it is unclear what the ALJ relied on in Dr. Wright's treatment notes to conclude a lack of supportability for this conclusion when the notes reflect that even with Botox injections, Plaintiff continues to experience three severe migraines a month that affect her daily activities. Moreover, while the ALJ states the opinions are inconsistent with the examination of Dr. Blaine, the consultative examiner, he provides no explanation. Dr. Blaine's report includes the diagnoses of fibromyalgia and migraines and includes Plaintiff's report that she goes to a dark quiet room for relief from her migraines [Tr. 1048, 1050]. Yet, there is no notation regarding the frequency or intensity of the migraines, so the inconsistency as determined by the ALJ cannot be discerned.

Having addressed the consistency analysis in terms of evidence from other medical sources, the Court also considers whether the ALJ properly considered the degree to which Dr. Wright's opinion is consistent with evidence from nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). First, in terms of Plaintiff's subjective reports regarding her conditions, as previously reviewed, the ALJ acknowledged her testimony that she has severe joint pain from fibromyalgia that limits her movement, that flashing lights and loud noises can trigger migraines, and that she depends on her spouse, friends, and family to help with the three children [Tr. 19]. The ALJ, however, discounted her reports as "not generally consistent with the medical evidence of record," thus appearing to be based on a lack of objective findings [Tr. 19]. And while "an ALJ's reliance on a lack of objective findings may not require remand where the ALJ also relied on other considerations such as a claimant's activities of daily living or improvement with treatment," *Rossi v. Comm'r of Soc. Sec.,* No 1:25-CV-625, 2025 WL 3671796 *11 (N.D. Ohio Dec. 18, 2025) (citation omitted), such is not the case here. The ALJ did not cite to reliance on Plaintiff's daily activities, her headache log, or any improvement with treatment, so it is unclear whether he found both her fibromyalgia and migraines controlled with medication or treatment such that any limitation for absenteeism or being off task was unwarranted. And on review, the Court is simply unable to determine how the ALJ reached the conclusion that Plaintiff's subjective complaints are inconsistent with the medical evidence. The same is true with respect to the ALJ's consideration of other nonmedical evidence of record, such as Plaintiff's husband's testimony. The ALJ stated, "[o]verall the evidence is not consistent with his testimony and ultimately his testimony is not found to be persuasive" [Tr. 22]. This, too, lacks sufficient explanation as to the inconsistency as determined by the ALJ because he fails to explain how his citation to the record

substantiates this point. Further elaboration on why this nonmedical evidence is inconsistent with the record is needed to facilitate meaningful review.

In sum, the ALJ's decision does not adequately explain why Plaintiff's fibromyalgia and migraine headaches, particularly when considered in combination, would not result in her being off task or absent for a percentage of the workday. Further, based on the ALJ's treatment of the issues discussed above, the Court cannot discern a logical bridge between his conclusions, Dr. Wright's opinions, and evidence in the record in determining that Dr. Wirght's opinion is not supported by his treatment notes or consistent with record evidence. Therefore, the Court finds that remand is necessary for further consideration.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's request to remand [**Doc. 13**], **REVERSES** the final decision of the Commissioner and **REMANDS** this matter for further consideration.

**IT IS SO ORDERED**.

ENTER:

Debra C. Poplin

Debra C. Poplin
United States Magistrate Judge